KUTTROFF, PICKHARDT & CO. (INC.) *v.* UNITED STATES (No. 2515) [1]

CONSTRUCTION, PARAGRAPH 28, AND SECTION 402, TARIFF ACT OF 1922—
    AMERICAN SELLING PRICE OF COMPETITIVE DYES.

In order to determine whether or not an imported dye is competitive with a domestic dye, under paragraph 28, Tariff Act of 1922, for the purpose of ascertaining American value under section 402, tests of the two dyes should not have been made on material for which the imported dye was commercially unsuitable. The judgment of the Board of United States General Appraisers appraising an imported dye known as Indanthrene blue powder upon the basis of a comparison of its strength and price with those of a domestic dye known as Ponsol blue paste is reversed upon a showing that the tests were made on low-grade paper and that the imported dye was commercially suitable for use only on high-grade paper.

United States Court of Customs Appeals, July 8, 1925

APPEAL from Board of United States General Appraisers, Reappraisement
13410-A
[Reversed.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* of counsel) for the appellant.
*Thomas J. Doherty* and *George F. Lamb* (*De Vries, Doherty, Davis & Lamb* of counsel) amici curiae.
*William W. Hoppin,* Assistant Attorney General (*J. G. Lerch,* special attorney, of counsel), for the United States.

[Oral argument Mar. 25, 1925, by Mr. Halstead, Mr. De Vries, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

A blue pigment in the form of a powder known as Indanthrene blue or Indra blue powder was appraised by the local appraiser at $6 per pound with the following comment: "American sale price three times strength." From that appraisement an appeal to reappraisement was duly taken by the importer which appeal was heard by a single general appraiser who sustained the entered value.

---

[1] T. D. 41055.

The collector applied to the Board of General Appraisers for a review of the decision of the general appraiser and the case was assigned to Board 3 for its consideration and determination on the record made before the general appraiser.

The evidence submitted by the importer to the general appraiser was to the effect that Indanthrene blue powder, is especially designed and manufactured for the tinting of photographic and other high grade papers; that no dye or pigment other than Indanthrene blue powder will give to such papers the exact tint or shade of color desired; that paper made wholly of bleached sulphite is not a high grade paper; that pigments in the form of paste can not be used as a substitute for Indanthrene blue; that prior to the introduction of Indanthrene blue in powder form a similar product in paste form was imported; that Indanthrene blue paste produced small blue specks on the finished paper and gave uneven results which reduced the paper to a second grade paper; that Indanthrene blue paste proved unsuitable for tinting paper and was therefore rejected; that because the paste was not satisfactory, Indanthrene blue was manufactured in powder form and in that form fully met the requirements of the paper manufacturers for the tinting of photographic and fine papers; that manufacturers of photographic paper refuse to use dyes in paste form; that the importer after years of experimentation "with many blues" found that Indanthrene blue powder gave the best results in tinting photographic and high grade papers; that for two years prior to November 20, 1922, attempts were made to substitute domestic colors and pigments for Indanthrene blue powder, but that the substitutes did not produce uniform results or the tint required by photographic experts; that no blue color or powder, similar to Indanthrene blue, is made in the United States; that at the time of the hearing before the board, users of Indanthrene blue knew of no color or dye of American manufacture which when used substantially in the same manner as Indanthrene blue powder would produce results substantially equal to those effectuated by that powder; that no color of American manufacture would give approximately the same tint and the same effect as Indanthrene blue powder; that tints produced by paste on photographic paper are not so brilliant as those produced by Indanthrene blue powder and that Indanthrene blue paste, due to progressive drying, can not be as well controlled as Indanthrene blue powder in tinting that kind of paper; that Indanthrene blue powder can not be used for the dyeing of fabrics because of the presence therein of large quantities of dextrine; that the Government by its own chemist made tests with Indanthrene blue powder and Ponsol blue paste in the laboratory of the importer; that the Ponsol blue produced a duller, less brilliant and less uniform shade than the Indanthrene blue and was less easily controlled; that Indanthrene blue powder is too ex-

pensive to use on low grade papers; that the price of Indanthrene blue to the importer was $1.4874 per pound and that the goods were entered at that value, plus $1.30 to make United States value on the date of exportation; that the sales price of Indanthrene blue in the American market, prior to September 21, 1922, was $2.50 per pound.

To meet the case made out by the importer the Government introduced the testimony of Willard F. Van Riper and of Frank Leonard Remlein. Van Riper testified that he was sales manager of the Du Pont Co., a manufacturer of dyes and colors and of Ponsol blue paste, which paste was sold to the paper trade and to the *cotton finishing trade* at the price of $2 per pound for small quantities, less 2 per centum discount on payment within 10 days; that Ponsol blue paste had been offered to the (paper?) trade for more than a year and that two sales, one in January and one in October, 1922, of 200 pounds each, were made to the Kalamazoo Paper Co.; that the witness did not know what kind of paper was manufactured by the Kalamazoo Paper Co.; that he did not know personally that Ponsol blue paste had been offered to any manufacturer of paper other than the Kalamazoo Paper Co.

Remlein testified that he made tests on bleached sulphite pulp with Indanthrene blue powder and with Ponsol blue paste; that in making the tests he used one-fourth of a pound of the Indanthrene blue powder and three-fourths of a pound of Ponsol blue paste to 1,000 pounds of bleached sulphite pulp; that the same relative proportions were used in making other tests; that the Ponsol blue paste was taken from a hermetically sealed container and that the paste must be kept hermetically sealed to prevent it from drying out and to keep it standard; that the Indanthrene powder was not kept in a hermetically sealed container as powders do not dry out; that the tests made with both materials were made in the same manner with the exception that the quantity of Ponsol blue paste used was three times that employed in making the tests with Indanthrene blue powder; that the results secured by using the powder and the paste were substantially the same; *that he never made any tests of the Indanthrene blue powder and Ponsol blue paste on any paper stock other than bleached sulphite pulp;* that there are very many papers, especially high-class papers, that are made out of materials other than bleached sulphite; that the quality of a paper depends entirely on the amount of rag stock it contains; that he never made any tests of the two materials on bleached sulphite containing rag stock; that he knew of no case in which Indra blue powder was used to test paper made of bleached sulphite stock; that he did not know whether Indanthrene blue powder was used exclusively for high-grade paper made from rag stock; that he never made a test with Ponsol blue paste which was not removed from a hermetically sealed container and that

Ponsol blue paste changes its strength if permitted to dry out; that he did not know whether a powder could be produced from Ponsol blue paste and that his company had never made a powder from the paste; that he did not know what the requirements of the trade were with respect to Indanthrene powder; that if a mill wrote in to ask for a fast color. to use for high grade *writing* papers, Ponsol blue paste would be offered.

From that testimony it is apparent that the witnesses for the Government made no tests whatever on photographic paper or on high-grade paper stock and based their conclusion that powder and paste produced substantially the same results when used in substantially the same manner wholly on tests made on bleached sulphite pulp, a material which contained no rag stock and from which no high-grade photographic paper is or can be produced. Indanthrene blue powder is commercially and practically used for tinting photographic and other high-grade papers. It is not commercially suitable for coloring bleached sulphite pulp, and it was just as incompetent for the Government to prove the competitive nature of the powder by tests on bleached sulphite as it would have been for the importers to rebut evidence of its competitive character by tests on fabrics for the coloring of which the powder is commercially unsuitable.

In order to show that the Ponsol blue paste was a competitive article and produced substantially the same results as Indanthrene blue powder when used in substantially the same manner, the tests should not have been made on material for the tinting of which the importation was commercially unsuitable.

Importer tested the tinting effects of powder and paste on photographic and high-grade papers and those tests according to the uncontradicted testimony for the importer did not secure substantially the same results when powder and paste were used substantially in the same manner. Tests of the powder and paste were also *made by the Government chemist* on high-grade paper in the factory of the importer and according to the testimony for the importer those coloring materials did not produce substantially the same results when used substantially in the same manner.

The testimony is wholly uncontradicted and unimpeached that the color secured by using the paste was duller, less brilliant, and less uniform than that produced by the powder. More than that, importer's witnesses testified that the paste as a coloring agent could not be as well controlled as the powder. It is worthy of comment. that the Government chemist who made the tests in importer's factory was not called as a witness.

The finding of the board that Indanthrene blue powder is competitive with Ponsol blue paste is not supported by the evidence, and is against all the material, competent, and relevant evidence in the case.

The judgment of the Board of General Appraisers must therefore be *reversed.*